# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Jenny Santhosh,<br>          Petitioner<br><br>        v.<br><br>Unemployment Compensation<br>Board of Review,<br>          Respondent | :<br>:<br>:<br>:<br>:   No. 423 C.D. 2025<br>:   SUBMITTED: June 16, 2026<br>:<br>:<br>:<br>: |

BEFORE:   HONORABLE LORI A. DUMAS, Judge
               HONORABLE STELLA M. TSAI, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: July 24, 2026**

Jenny Santhosh (Claimant), proceeding *pro se*, petitions for review of the order of the Unemployment Compensation Board of Review, affirming the decision of the Unemployment Compensation Referee finding her ineligible for benefits under Section 402(e) of the Unemployment Compensation Law[1] due to willful misconduct. We affirm.

Claimant worked full-time as a technician in quality control for the American National Red Cross (Employer) from 2001 until her employment was terminated in November 2023. Claimant filed a claim for unemployment compensation benefits shortly thereafter. In February 2024, the Department of Labor and Industry's Office of Unemployment Compensation Benefits issued a

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing that a claimant "shall be ineligible for compensation for any week . . . (e) [i]n which h[er] unemployment is due to h[er] discharge . . . from work for willful misconduct").

determination that Claimant was ineligible for benefits because she was discharged for violating a reasonable work rule, *i.e.*, willful misconduct. Certified Record (C.R.) at 51. Claimant timely appealed this determination.

At a hearing before the Referee, Employer presented documentary evidence as well as the testimony of Jaimee Rappleye, its Director of Manufacturing, and Michael Boykin, its Manager of Manufacturing. On November 13, 2023, Rappleye and Boykin received an anonymous tip that records were being falsified in the quality control unit. C.R. at 188. Rappleye immediately went to her Vice President and an investigation was opened. *Id.* As part of the investigation, Rappleye reviewed 40 days of video tapes which revealed that on 10 of those days Claimant failed to follow proper procedures and entered false information on Employer's forms. *Id.*

Specifically, Rappleye and Boykin testified that at the beginning of every day, Claimant was to start the centrifuges, wait for them to reach maximum speed, and document on Employer's forms the exact time and temperature at which each machine reached maximum speed. C.R. at 188-89, 194, 201. The process of running the centrifuges took approximately eight minutes in total, with the machines reaching maximum speed after approximately four minutes. C.R. at 193-94, 201, 204-05. Claimant was required to remain at the centrifuges until the process was complete so that the proper readings could be entered. *Id.* Rappleye's review of the video tapes showed that on 10 occasions Claimant started up the centrifuges, but then left the area and did not return until 15 to 20 minutes later, after the machines had stopped spinning and the readouts said "end" or "zero." C.R. at 193-94, 199, 201, 205. Claimant was seen documenting evidence on Employer's forms after she returned, meaning that she could not have observed the time and temperature at which the machines actually reached maximum speed on those 10 occasions and

2

therefore she necessarily falsified records. C.R. at 191-94, 201. Claimant's failure to follow proper procedures resulted in Employer being unable to confirm the centrifuges were working properly and that the blood products were spun down correctly. C.R. at 194. Employer had to place an entire month of plasma and blood units in quarantine, meaning that hospitals could not use the units until Employer was able to complete its investigation and ensure the machines were working properly. C.R. at 189, 200.

According to Rappleye and Boykin, Employer trained Claimant on the proper procedures for testing the centrifuges and provided her with a handbook, and a copy of Employer's policies and procedures were available in both the laboratory where Claimant worked and online. C.R. at 191-92, 195, 206. Rappleye also stated that Claimant correctly performed the centrifuge procedures during her annual competency assessments, the last time being in July 2023. C.R. at 195-97. Both witnesses further testified that Claimant received a copy of Employer's "Work Rules" policy, which prohibits the falsification of Employer's records and indicates that violation may result in discipline up to and including termination. C.R. at 187, 205-06. A copy of this policy was also admitted into evidence. C.R. at 23.

On November 15, 2023, Rappleye interviewed Claimant regarding the investigation, with Boykin present and taking notes. C.R. at 189, 200. Claimant admitted during this interview that she followed Employer's centrifuge procedures when others were watching, but did not follow proper procedures when she was not being watched. C.R. at 190, 201. Claimant's employment was terminated effective November 17, 2023, with the stated reason being falsification of Employer's records. C.R. at 187.

Claimant, who at that time was represented by counsel, testified that she consistently performed the centrifuge testing according to how she was trained

3

by Employer. C.R. at 208-10. According to Claimant, Rappleye and Boykin did not explain during the interview what she did wrong, and she denied ever being told what specific work rule she violated. *Id.*

In July 2024, the Referee issued a decision and order finding that Employer met its burden of establishing Claimant's employment was terminated for violation of a reasonable work rule, namely falsification of Employer's records. C.R. at 219-20. The Referee credited the testimony of Rappleye and Boykin in its entirety, and did not credit Claimant's testimony. C.R. at 220. Given these findings, the Referee determined that Claimant was ineligible for benefits under Section 402(e) of the Law. C.R. at 220-21.

Claimant appealed the Referee's order and the Board affirmed, adopting and incorporating the Referee's findings and conclusions. C.R. at 244-45. Like the Referee, the Board resolved the conflicts in the testimony in favor of Employer, specifically crediting the testimony of Employer's witnesses that Claimant admitted to falsifying records during the interview. C.R. at 245. Claimant then petitioned this Court for review.

On appeal, Claimant argues that the Board's finding that Employer terminated her employment due to willful misconduct is not supported by substantial evidence. Specifically, Claimant maintains that Employer failed to prove that she was aware of the specific rule she allegedly violated. Moreover, she claims that there is not substantial evidence to support willful misconduct given Employer's reliance on video tapes which were not made part of the record, and due to the "inconsistent testimony" of Employer's witnesses. Claimant's Br. at 3. We disagree.

While the Law does not define willful misconduct, it has been construed by our courts "as (1) wanton and willful disregard of an employer's

4

interests; (2) deliberate violation of an employer's rules; (3) disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interest or the employee's duties and obligations." *Walker v. Unemployment Comp. Bd. of Rev.*, 202 A.3d 896, 902 (Pa. Cmwlth. 2019) (citation omitted). Where an employer alleges willful misconduct based on an employee's violation of a work rule, the employer bears the burden of proving the existence of a reasonable work rule, an employee's awareness of the rule, and its violation. *See, e.g., Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). Once an employer establishes these elements, the burden then shifts to the claimant "to prove that she had good cause for her actions." *Id.*

Here, Claimant asserts that Employer's witnesses testified that her employment was terminated for falsifying records "by failing to record centrifuge readings at the exact 8[-] to 9-minute mark[.]" Claimant's Br. at 6. She goes on to argue that "the record is devoid of any evidence demonstrating that Claimant, a 23-year [sic] employee, was ever informed of, trained on, or provided an acknowledgment of this highly specific and precise timing requirement for centrifuge readings." *Id.* at 6-7. However, Employer's rule prohibiting the falsification of records was entered into evidence, and that is the specific rule Claimant was found to have violated.[2] Employer's witnesses testified that all employees are given a copy of the work rules upon being hired, and the work rules

---

[2] This Court has a long history of cases holding that a work rule prohibiting the falsification of records is reasonable and that its violation constitutes willful misconduct under Section 402(e) of the Law. *See, e.g., Nolan v. Unemployment Comp. Bd. of Rev.*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981); *Reyes v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 864 C.D. 2016, filed December 16, 2016); *Zeo v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1040 C.D. 2014, filed January 8, 2015). These unreported panel decisions are cited for their persuasive value only. *See* Pa.R.A.P. 126(b)(1); 210 Pa. Code § 69.414(a).

5

were available for Claimant's review both in the lab and online. Importantly, Rappleye and Boykin stated that Claimant was trained on the proper procedures for testing the centrifuges, and that she correctly performed the procedures in her annual competency assessments, most recently in July 2023. Their testimony, which the Board credited in its entirety, amounts to substantial evidence to support the Board's findings regarding willful misconduct. Claimant's argument essentially asks this Court to overturn the Board's credibility determinations and reweigh the evidence in her favor, which we cannot do. *See, e.g.*, *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (the Board is the ultimate factfinder and is empowered to resolve all issues of witness credibility, conflicting evidence, and evidentiary weight).

Claimant further argues that the Board's finding of willful misconduct is not supported by substantial evidence because Employer relied on the testimony of its witnesses as to what they saw on the video tapes, rather than entering the video tapes themselves into evidence. However, "the best evidence rule[3] 'is a technical rule of evidence not generally applicable to administrative proceedings[,]" including in the unemployment compensation context. *Wilshire v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1765 C.D. 2013, filed April 30, 2014), slip op. at 7 [quoting *DiLucente Corp. v. Pa. Prevailing Wage Appeals Bd.*, 692 A.2d 295, 298 (Pa. Cmwlth. 1997)]. Rappleye and Boykin testified as to what they observed on the video tapes, Claimant had the opportunity to cross-examine them regarding their observations, and the Board ultimately found their testimony credible. Moreover, the observations of Employer's witnesses were corroborated by Claimant's

---

[3] Rule 1002 of the Pennsylvania Rules of Evidence, commonly referred to as the best evidence rule, provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002.

admission during the November 15, 2023 interview that she did not follow proper procedures when no one was watching her. *See Yost v. Unemployment Comp. Bd. of Rev.*, 42 A.3d 1158, 1164-65 (Pa. Cmwlth. 2012) (rejecting claimant's argument that witness testimony regarding observations from video tape was insufficient and explaining that Board, as fact finder, was required to make such credibility determinations and resolve conflicts in testimony). Finally, our review of the record reveals that the testimony of Boykin corroborated and clarified that of Rappleye, and we therefore reject Claimant's characterization of their testimony as "inconsistent."[4]

In sum, when viewing the evidence presented in this matter in the light most favorable to Employer as the prevailing party below,[5] we conclude that the Board's findings are supported by substantial evidence. Accordingly, we affirm the order of the Board.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[4] Claimant also asserts the Board erred by failing to consider that Employer's stated reason for her termination was pretext for retaliation, as evidenced by the fact that Claimant was fired shortly after she returned from disability leave. *See* Claimant's Br. at 3, 9-10. However, this argument has been waived because it was not raised before the Referee, and Claimant failed to present any evidence of purported retaliation or the "suspicious timing" (Claimant's Br. at 3) relative to her disability leave. *See, e.g.*, *Yost*, 42 A.3d at 1165 (this Court may not consider issues that were not raised previously).

[5] *See, e.g.*, *Chapman*, 20 A.3d at 608 ("Court must examine the evidence in the light most favorable to the party who prevailed before the Board, and to give that party the benefit of all inferences that can be logically and reasonably drawn" from the evidence).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jenny Santhosh,                           :
                          Petitioner       :
                                          :
          v.                              :     No. 423 C.D. 2025
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                          Respondent       :

# **O R D E R**

AND NOW, this 24th day of July, 2026, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

<br>

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita